## THE CADIZ.[1]

*'Circuit Court, E. D. Louisiana.* April 1, 1884.)

1. COLLISION—REV. ST., ART. 4233, RULE 20.
  Steamer found in fault for violating rule 20, art. 4233, of the Revised Statutes: "If two vessels, one of which is a sail vessel and one a steam vessel, are proceeding in such directions as to involve a risk of collision, the steam vessel shall keep out of the way of the sail vessel, and the sail vessel shall keep her course.

2. COLLISION—EFFORTS MADE IN EXTREMIS.
  In this case of collision, what was evidently done *in extremis*, if unwise, was error and not fault.

3. SUBROGATION.
  The original libelant having died during the pendency of the suit, and his widow as executrix having been made a party, and she having sworn to the sale and transfer of the claim by the original libelant to the subrogee, the court finds that the proper parties are before it and the subrogee properly subrogated and entitled to judgment.

Admiralty Appeal.

*Emmet D. Craig,* for libelant.

*George L. Bright,* for claimant.

PARDEE, J. In April, 1883, the steamship Cadiz, bound up the Mississippi river, when near the head of the Passes, about nine miles above the jetties, collided with the small schooner Maggie, then bound down the river. There was little, if any wind, and the schooner was going with the current from four to five miles an hour, aided by one port oar with which she was working up to the right hand or west shore. When she was struck she was midway between the middle of the pass (then about 500 feet wide with 250 feet channel) and the right bank, and was working nearer to the shore. The Cadiz at the time of the collision was running at seven to eight miles an hour, and was crossing from the left to the right bank side of the channel to save distance in the bend just above. She had plenty of water on both sides of her, and was not compelled, but by convenience, to take the exact course she did take. The steamer struck the schooner on the port side, and with her starboard anchor tore out the schooner's masts and sails, and caused other injuries. The schooner's crew, before the collision, hallooed, the steamer whistled and the pilot and officers of the steamer saw the schooner before the collision, saw the colli-

[1] Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

sion, saw the schooner with her crew drift by in a helpless condition, and at no time changed her course or slackened her speed. The schooner was towed to Port Eads, and from there to the city of New Orleans, where she now lies, her owner not repairing her from alleged inability. An examination showed that her bows were torn up, her bit carried away, also her bow-sprit and gaffs and part of her iron work, her bulwarks and bow all open, her masts broken and her sails torn and her standing and running rigging rendered worthless.

That the steamer was in fault there can be no doubt, for she was violating the well known rule of navigation. "If two vessels, one a sail vessel and one a steam vessel, are proceeding in such directions as to involve a risk of collision, the steam vessel shall keep out of the way of the sail vessel and the sail vessel shall keep her course," and also the rules provided by the secretary of war for the regulation of the navigation of South Pass, the fourth rule providing as follows: "All upward bound vessels must keep to the right or nearest to the east bank of the Pass, giving the right of way to those bound in the opposite direction." The schooner was without fault, unless the conduct of her crew in making increased effort to throw her towards the right bank, when, so far as the schooner was concerned, the collision was inevitable, was wrong. Under the evidence I cannot say that it was wrong or had much effect other than to present more of the schooner's broadside to the approaching steamer." What was done in this direction was evidently done *in extremis*, and if unwise, was an error and not a fault. See Cohen, Adm. 221, and cases there cited.

An effort is made by claimant to show that the schooner was in fault in not having a full set of oars, one having been lost and the other broken, but I cannot see that this affected the collision, and it is hardly consistent to claim that it did, along with the claim that the oars the schooner did have were misused. The fact seems to be that the schooner was in the river with no breeze and no ability to propel herself, floating with the current, and if she had any right to be there, which is not disputed, the steamer had no right to run her down. The damages allowed by the commissioner appear to be sustained by the evidence. The matter was examined and re examined by the district court, and upon every disputed item the district judge found, as I find, that the weight of the evidence in the conflicting testimony given as to estimates, is with the libelant.

In the proceedings in the district court the claimant denies that Cietcovich was the owner of the injured schooner, but he does not disclose who was the owner. On this point the libelants' case is clear by the documentary evidence offered and by the sworn testimony of Popovich and Milanovich, to one of whom claimant, by inference, imputes ownership.

The technical right of Popovich, subrogee, is attacked in this court, the claimant pretending that as Cietcovich died during the proceedings in the district court and his executrix was made a party, that she

only could have had the right to recover, and then, as she denied that the schooner belonged to the succession of Cietcovich, no one could recover. The answer to this appears in the record. Cietcovich, July 10, 1883, sold the schooner to Popovich, and on the thirteenth of July, transferred to him, by order on his attorney, the claim for damages in suit, and on November 13, 1883, on showing that the said libelant "did transfer his interest in above-entitled cause to M. Popovich, of this city as will appear by document on file, it is ordered by the court that said Popovich be subrogated to all the rights of said Cietcovich in said suit." The record does not show when Cietcovich died, but his widow swears to the sale and transfer by him to Popovich, and on all the showing made there can be no doubt that proper parties are before the court, and that Popovich is properly subrogated and entitled to judgment in the case.

A decree will be entered in the same terms as that appealed from, with costs of this court added.